UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY D. GIBSON,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,[1] Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 06-5046 JC<br><br>MEMORANDUM OPINION |

## I. SUMMARY

On August 15, 2006, plaintiff Larry D. Gibson ("plaintiff") filed a Complaint seeking review of the denial by the Commissioner of Social Security ("Commissioner") of plaintiff's application for benefits. The parties have filed a consent to proceed before a United States Magistrate Judge.

///
///
///

---

[1] Michael J. Astrue is substituted as Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d)(1).

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").[2] The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; August 17, 2006 Case Management Order, ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The disputed findings of the Administrative Law Judge are supported by substantial evidence and are free from material error.[3]

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

In November 1998, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 116). Plaintiff asserted that he became disabled on January 1, 1998, due to pain in his right leg and hip, vision problems, diabetes mellitus, high blood pressure, numbness in his right foot, and inability to read or write. (AR 16-17, 116, 123). Administrative Law Judge ("ALJ") Zane A. Lang (the "First ALJ") examined the medical record and heard testimony from plaintiff on May 16, 2000. (AR 42-76). On November 1, 2000, the First ALJ determined that plaintiff was not disabled through the date of the decision. (AR 13-23). On August 16, 2002, the Appeals Council denied plaintiff's application for review of the First ALJ's decision. (AR 6-7).

Plaintiff thereafter sought judicial review (Case No. CV 02-7705-SGL), and the case was remanded for further administrative proceedings on March 25, 2004. (AR 512-22). On April 30, 2004, the Appeals Council, in turn, remanded the case to the First ALJ. (AR 524). The First ALJ held supplemental hearings on May 24,

---

[2] Plaintiff's Motion is accompanied by exhibits ("Plaintiff's Ex.").

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

2

2005 and January 24, 2006. (AR 711). On April 27, 2006, the First ALJ determined that plaintiff was not disabled through the date of the decision. (AR 707-27).

Plaintiff again sought judicial review (Case No. CV 06-5046-JC), and on December 26, 2006, this Court granted the Commissioner's unopposed motion to remand the case to locate plaintiff's claim file or to reconstruct the record. (AR 730-32). The record had to be reconstructed, and on March 3, 2007, the Appeals Council remanded the case to ALJ Edward P. Schneeberger (the "Second ALJ"). (AR 733-34). The Second ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 3, 2007. (AR 452-510).

On September 6, 2007, the Second ALJ determined that plaintiff was not disabled through the date of the decision. (AR 431-41). Specifically, the Second ALJ found: (1) plaintiff suffered from severe mental and physical impairments[4] (AR 434); (2) plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments (AR 434); (3) from November 9, 1998 to July 7, 2005, plaintiff retained the residual functional capacity to (a) lift and/or carry up to 50 pounds occasionally and 25 pounds frequently; (b) stand and/or walk up to 4 hours in an 8-hour workday; (c) sit up to 6 hours in an 8-hour workday; (d) occasionally climb, balance, stoop, kneel, crouch, and crawl; (e) learn simple, repetitive skills; (f) adapt to minimal changes in the work environment; (g) remember and comply with one and two part instructions; and (h) maintain concentration for a regular work schedule (AR 434); (4) from July 8, 2005 to the date of the decision, plaintiff retained the residual functional capacity to (a) lift and/or carry up to 20 pounds occasionally and 10 pounds frequently;

---

[4] The Second ALJ did not specify which impairments were severe. However, at step three of the sequential evaluation process, the ALJ listed the following impairments in stating that they did not meet or equal a listing: diabetes, tibula-fibula condition, asthma condition, borderline intellectual functioning, and substance abuse. (AR 434).

(b) stand and/or walk up to 4 hours in an 8-hour workday; (c) sit up to 6 hours in an 8-hour workday; (d) occasionally push/pull with the right lower extremity; (e) occasionally climb, kneel, crouch, and crawl; (f) understand, remember, and carry out short, simplistic instructions; and (g) interact appropriately with supervisors, coworkers, and peers (AR 434); (5) plaintiff had no past relevant work experience (AR 439); (6) although plaintiff's limitations did not allow him to perform the full range of sedentary work, there were a significant number of jobs in the national economy that he could perform, such as a riveting machine operator, mold maker helper, final assembler, and sorter (AR 440-41); and (7) plaintiff's allegations regarding his limitations were not totally credible (AR 434-39).  On December 4, 2007, the Appeals Council denied plaintiff's application for review.  (AR 423-24).

III. **APPLICABLE LEGAL STANDARDS**

  A. **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

  (1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

///

  (2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

  (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

  (4) Does the claimant possess the residual functional capacity to perform his past relevant work?[5] If so, the claimant is not disabled. If not, proceed to step five.

  (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability). If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work

---

[5]Residual functional capacity is "what [one] can still do despite [one's] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. § 416.945(a).

experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden, depending upon the circumstances, by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett).

The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record. See Tackett, 180 F.3d at 1101; see also Robbins v. Social Security Administration, 466 F.3d 880, 886 (9th Cir. 2006) (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information). The DOT is the presumptive authority on job classifications.[6] Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's

---

[6]Among other things, the DOT may reflect the General Learning Ability ("GLA") required for a given job. The Department of Labor defines General Learning Ability ("GLA") as the following: "The ability to 'catch on' or understand instructions and underlying principles; the ability to reason and make judgments. Closely related to doing well in school." (Plaintiff's Ex. 1 at 9-3). Five aptitude levels are defined by reference, *inter alia*, to the percentile of the working population. (Plaintiff's Ex. 1 at 9-2).

testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).[7] In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citations omitted).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins, 466 F.3d at 882 (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

---

[7]Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi, 486 F.3d at 1152 n.6.

7

953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.   FACTS**

   **A.   Consultative Psychological Evaluations**

On July 18, 2000, Dr. Mark Pierce, a clinical psychologist, performed a consultative examination of plaintiff, which included a clinical interview, a mental status examination, and a bevy of psychologist tests.  (AR 405-15).  The results of plaintiff's IQ tests (Wechsler Adult Intelligence Scale-III ("WAIS-III)) showed that plaintiff's verbal IQ was 72, his performance IQ was 75, and his full scale IQ was 71.  (AR 410).  These scores were characteristic of the lowest 3 to 5 percent of the general population.  (AR 169).  However, the results of plaintiff's tests for mental sequencing (Trails A and B) and memory (Wechsler Memory Scale-Revised ("WMS-R")) were "stronger than anticipated."  (AR 410).  In particular, plaintiff's mental sequencing abilities fell within the mid low average range (13th percentile) to the bottom end of the high average range (75th percentile).  (AR 410).  Plaintiff's verbal memory fell in the borderline range, his visual memory fell solidly within the average range, his attention-concentration fell within the average range, and he performed "relatively strongly by memory testing."  (AR 410).

Dr. Pierce diagnosed plaintiff with "[b]orderline intellectual functioning (with additional scores significantly stronger)."  (AR 411).  He noted that plaintiff did not evidence any estimated significant cognitive, emotional, or personality difficulties, aside from borderline intellectual functioning, relative to performing simple work functions.  (AR 411).  Dr. Pierce added that plaintiff had the capacity to learn simple, repetitive skills and to adapt to minimal changes in a work environment; plaintiff's reasoning capacities, by estimate, were "actually adequate to complete somewhat stronger than simple[,] repetitive work functions"; plaintiff

8

showed adequate social skills; plaintiff could remember and comply with simple one and two part instructions; and plaintiff could likely concentrate adequately for a regular work schedule. (AR 411-12). Dr. Pierce also completed a medical source statement form, wherein he ranked plaintiff's ability to understand, remember, and carry out instructions as "good" or "excellent" in all areas, including the ability to make simple work-related decisions. (AR 414).

On July 11, 2005, Dr. Rosa Colonna, a clinical psychologist, performed a second consultative examination of plaintiff, which also included a clinical interview, a mental status examination, and a battery of psychologist tests. (AR 686-94). The results of plaintiff's IQ tests (WAIS-III) revealed that plaintiff's verbal IQ was 83, his performance IQ was 78, and his full scale IQ was 79. (AR 689). These scores were reflective of the lowest 7 to 13 percent of the general population. (AR 169). Although Dr. Colonna administered numerous psychological tests, she found that the results were mixed for validity and reliability. (AR 690).

Dr. Colonna diagnosed plaintiff with "probably borderline intellectual functioning," personality disorder with dependent and antisocial traits, and cocaine dependence in questionable remission. (AR 690). She commented that plaintiff would be able to: understand, remember, and carry out short, simplistic instructions without difficulty; make simplistic work-related decisions without special supervision; and interact appropriately with supervisors, coworkers, and peers. (AR 690-91). She indicated that he presented with a mild inability to understand, remember and carry out detailed instructions. (AR 690). Dr. Colonna also completed a medical source statement form, wherein she assessed plaintiff's limitations in his ability to understand, remember, and carry out instructions as "none" or "slight" in all areas. (AR 692).

///
///

**B.     The Second ALJ's Mental Residual Functional Capacity Assessment and the Vocational Expert's Testimony**

The Second ALJ relied on the opinion of Dr. Pierce in determining plaintiff's mental limitations prior to July 8, 2005, and on the opinion of Dr. Colonna in assessing plaintiff's mental limitations on and after July 8, 2005. (AR 437-38). At the July 3, 2007 hearing, the ALJ presented hypothetical questions to the vocational expert that represented plaintiff's functional abilities (both before and after July 8, 2005). (AR 490-503). The vocational expert testified that an individual with plaintiff's residual functional capacity could perform work as a riveting machine operator, mold maker helper, final assembler, and sorter.[8] (490-503). Based on the testimony of the vocational expert, the ALJ found plaintiff not disabled at step five of the sequential evaluation process. (AR 440-41).

## V.     DISCUSSION

**A.     The ALJ Properly Concluded That Plaintiff Could Perform Other Work That Exists in Significant Numbers in the National Economy**

Plaintiff contends that the Second ALJ failed to fulfill his burden of identifying occupations within plaintiff's functional capacity at step five of the sequential evaluation procedure. (Plaintiff's Motion at 4). Specifically, plaintiff argues that the occupations identified by the vocational expert and relied upon by the Second ALJ did not give adequate consideration to plaintiff's borderline intellectual functioning. (Plaintiff's Motion at 5). He alleges that "[a]n individual who suffers from borderline intellectual functioning unfortunately falls within the

---

[8] According to the DOT, the occupations of a riveting machine operator (DOT § 699.685-030), mold maker helper (DOT § 700.687-050), final assembler (DOT § 713.687-018), and sorter (DOT § 521.687-086) all require a GLA of Level 4. (Plaintiff's Exs. 2-5). Occupations with a GLA of Level 4 require a low degree of aptitude ability, constituting the lowest third of the working population but excluding the bottom 10 percent. (Plaintiff's Exs. 2-5).

bottom 10% of intellectual functioning" and could not perform the jobs identified because such jobs require a Level 4 GLA, i.e., a degree of aptitude ability which excludes the bottom 10% of the working population. (Plaintiff's Motion at 5). This Court disagrees and finds that the Second ALJ properly relied on the vocational expert's testimony in determining that plaintiff could perform other work that exists in significant numbers in the national economy.

First, plaintiff offers no authority for the proposition that the GLA aptitude scale, which as noted above, measures one's ability to "catch on" or understand instructions and underlying principles, and to reason and make judgments by reference to a percentile of the *working* population, is equivalent or directly comparable to IQ or the other bases upon which the psychologists' rendered qualified opinions that plaintiff has/had borderline intellectual functioning relative to the *general* population.[9] Contrary to plaintiff's representation, nothing in the DOT suggests that a Level 4 GLA excludes those within the bottom 10% of *intellectual functioning*, let alone the bottom 10% of the intellectual functioning of the *general* population.  (Plaintiff's Motion at 7-8).  Rather, the DOT refers to "aptitude ability." (Plaintiff's Exs. 2-4).

Second, the evidence in the record reasonably supports a conclusion that plaintiff had the aptitude to perform the jobs identified by the vocational expert. Both consultative examiners opined that plaintiff was able to understand, remember and carry out short, simple instructions, including the ability to make judgments on simple work-related decisions. (AR 414, 692). None of the jobs identified by the vocational expert call for a greater ability to reason or make judgments.

///

---

[9]As noted above, Dr. Pierce diagnosed plaintiff with "[b]orderline intellectual functioning (with additional scores significantly stronger)[,]" and Dr. Colonna diagnosed plaintiff with "probably borderline intellectual functioning[.]"

11

1       Finally, plaintiff does not challenge the ALJ's residual functional capacity
2 assessment or suggest that the ALJ should have incorporated additional limitations
3 relating to plaintiff's intellectual functioning.  Thus, plaintiff does not dispute,
4 *inter alia*, that (1) prior to July 7, 2005, he could learn simple, repetitive skills,
5 adapt to minimal changes in the work environment, remember and comply with
6 one and two part instructions, maintain concentration for a regular work schedule;
7 or that (2) after July 7, 2005, he could understand, remember, and carry out short,
8 simplistic instructions.  Nor does plaintiff dispute that the ALJ's hypothetical
9 questions to the vocational expert properly included all such limitations.  As noted
10 above, so long as the hypothetical question posed to the vocational expert sets out
11 the limitations supported by substantial evidence in the record (here the opinions
12 of Drs. Pierce and Colonna), and so long as the vocational expert's opinion is
13 consistent with the DOT as is the case here, the vocational expert's opinion
14 constitutes substantial evidence in support of a step five determination.

15       Accordingly, the ALJ's step five determination is supported by substantial
16 evidence and is free from material error.

## VI. CONCLUSION

18       For the foregoing reasons, the decision of the Commissioner of Social
19 Security is affirmed.

20       LET JUDGMENT BE ENTERED ACCORDINGLY.

21 DATED: November 30, 2008

                                            _/s/_
                                Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE